UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 09-CV-00260 (JFB) (ETB)

———————————

Frank Bifulco and Sam Miller, individually, and on behalf of all others similarly situated,

Plaintiff,

versus

The Mortgage Zone, Inc., Alan Breecker, and Jonathan Evans,

Defendants.

———————————

**MEMORANDUM AND ORDER**
November 9, 2009

———————————

Joseph F. Bianco, District Judge:

Plaintiffs Frank Bifulco and Sam Miller[1] (hereinafter, "plaintiffs") commenced this action on behalf of themselves and others similarly situated on January 22, 2009, seeking unpaid minimum wages and overtime compensation from defendants The Mortgage Zone, Inc.; Alan Breecker; and Jonathan Evans (collectively, "defendants"), pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as New York Labor Law.[2] Plaintiffs now move, with respect to Count Three of the complaint, for conditional certification as an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)"). Plaintiffs also move for court authorized notice to all individuals who are similarly situated in this potential collective action and, to facilitate such notice, the production by defendants of a computer-readable data file containing the names, addresses, and telephone numbers of certain of defendants' former and current employees. For the reasons set forth below, plaintiffs' motion for conditional certification under Section 216(b) of the FLSA, as well as

---

[1] By letter dated November 6, 2009, plaintiffs notified the Court that plaintiff Samuel Miller III decided not to pursue the case at this time. Plaintiffs requested permission to substitute one of the additional sixteen opt-in plaintiffs to serve as a named plaintiff in the action. Plaintiffs' request is hereby granted.

[2] Plaintiffs filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure with respect to their claims under New York Labor Law, but no motion for Rule 23 class certification has yet been made by plaintiffs at the time of this opinion.

court authorized notice and the production by defendants of a data file of potential opt-in plaintiffs' contact information, is granted. However, the scope of such notice shall be limited to only those individuals who are "similarly situated" to the named plaintiffs, as set forth in this Memorandum and Order. The Court further orders that the parties jointly submit a modified notice in accordance with this Memorandum and Order for approval by the Court within thirty (30) days of the date of this Order.

I. BACKGROUND

A. Facts

Plaintiff Frank Bifulco was formerly employed as a loan officer by defendants from January 2006 to January 2008 and worked at defendants' office located in Rockville Centre, New York. (Complaint ("Compl.") ¶ 5; Plaintiffs' Ex. C at 1.) Plaintiff Sam Miller was formerly employed as a loan officer by defendants and worked at defendants' office in Hauppauge, New York. Defendant The Mortgage Zone, Inc. ("Mortgage Zone") is a mortgage bank that provides mortgage banking services to consumers in New York State. (Compl. ¶ 9.) Its headquarters are located in Hauppauge, New York and its offices are located in Long Island, New York. (*Id.*) Defendant Alan Bleecker is the President, Owner, Chairman, and Chief Executive Officer of Mortgage Zone, and has been at all times relevant to the allegations in the complaint. (Compl. ¶ 10.) Defendant Jonathan Evans has, at all times relevant, been the Vice President of Mortgage Zone. (Compl. ¶ 11.) The individual defendants are alleged to have exercised operational control and control over significant business functions of Mortgage Zone and to have determined employee compensation, made hiring decisions, and acted on behalf of and in the interest of the company in devising, directing, implementing, and supervising the challenged wage and hour practices and policies relating to loan officers. (Compl. ¶¶ 10-11.)

Plaintiffs allege that defendants dictated, controlled, and ratified the wage and hour policies and all related employee compensation policies for their loan officers located in New York. (Compl. ¶ 14.) In particular, per defendants' company-wide policies, plaintiffs and all similarly situated loan officers allegedly did not receive a guaranteed salary or hourly rate for the hours they worked, and they regularly worked more than forty (40) hours per week, including evenings, early mornings, and weekends, without overtime compensation. (Compl. ¶¶ 14-17; Plaintiff's Exs. C-K ¶¶ 7.) Furthermore, according to plaintiffs and similarly situated loan officers, "[d]efendants did not record the time [they] worked or the time worked by other loan officers. While [they were] employed, [d]efendants did not have a time keeping system for their loan officers. (Plaintiffs' Exs. C-K ¶¶ 10.) Plaintiffs also allege that all loan officers had essentially the same job titles, compensation plans, job descriptions, and job requirements. (Compl. ¶ 13.) These employees' primary duty was to "sell home loans by calling prospective customers from [d]efendants' office over the telephone, inputting their information into the Mortgage Zone computer database and closing a deal." (Plaintiffs' Exs. C-K ¶¶ 5.)

B. Procedural History

Plaintiffs filed this action on January 22, 2009. On July 9, 2009, plaintiffs submitted the instant motion for conditional certification as an FLSA collective action. On October 9, 2009, defendants filed their opposition, and plaintiffs submitted a reply on October 13,

2

2009. Oral argument was heard on the pending motion on October 30, 2009. The Court has fully considered the submissions of the parties.

## II. DISCUSSION

### A. Conditional Certification

#### 1. Legal Standard

Section 216(b) of Title 29 provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) of the FLSA provides an employee with a private right of action to recover unpaid overtime compensation and/or minimum wages. *See id.*; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Parks v. Dick's Sporting Goods, Inc.*, No. 05 Civ. 6590 (CJS), 2007 WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

To determine whether an action should be certified as an FLSA collective action, a two-step analysis is used. *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008) ("Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA."). The first step is to determine whether the proposed class members are "similarly situated." *Id.*; *see also Gjurovich*, 282 F. Supp. 2d at 105 ("Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff."). At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and plaintiff must make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek*, 229 F.R.D. at 387. In making this showing, "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan" is required. *Id.* (quotations omitted). This first stage determination is "based on the pleadings, affidavits and declarations[.]" *Hens v. ClientLogic Operating Corp.*, No. 05 Civ. 381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006); *see also Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

Importantly, "the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Gjurovich*, 282 F. Supp. 2d at 104 (internal quotation marks and citation omitted).

On the other hand, the second phase of the FLSA collective action inquiry typically occurs after the completion of discovery; at that point, the court makes a factual finding based on the developed record as to whether or not the class members are actually "similarly situated." "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Hens*, 2006 WL 2795620, at *4 (citation omitted). If the court determines at that time that the members are not similarly situated under the law, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Rubery*, 569 F. Supp. 2d at 336 (quotation and citation omitted). Also, "should the class description later be shown to require additional modifications, they can be made, as appropriate, during a second tier inquiry." *Id.* at 338; *see also Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (stating that the "court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so").

Notably, "[c]ollective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure." *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 348 (W.D.N.Y. 2007). Under the FLSA, potential plaintiffs are required to "opt-in" "to be bound by the judgment (and to benefit from it)." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Each potential plaintiff must file his or her written consent in the court in which the suit is brought. *See id.* In relation to the class certification requirements, "a named plaintiff in a collective action need not demonstrate other factors – numerosity, commonality, typicality, and adequacy of representation – which are required to bring a class action." *Hens*, 2006 WL 2795620, at *3.

2. Application

Here, plaintiffs have alleged that they and the potential opt-in plaintiffs, who worked as loan officers for Mortgage Zone, were subjected to a uniform policy and practice of being required to work in excess of forty (40) hours per week without receiving overtime or minimum pay, in violation of the FLSA. Specifically, plaintiffs allege that the defendants have a common policy or practice to deny minimum and overtime wages to their loan officers by paying them on a commission-only basis. Plaintiffs have also alleged that plaintiffs and opt-in plaintiffs have similar job duties, including the primary duty of selling residential home loans. Plaintiffs also allege that defendants failed to maintain accurate time records of hours worked by employees. Named plaintiff Frank Bifulco attests that, while employed by defendants, he worked with approximately twenty (20) other loan officers whom he observed on a daily basis who were similarly not paid overtime wages despite working over forty (40) hours per week. (Plaintiffs' Ex. C ¶ 9.) The allegations in the complaint, motion for certification, and plaintiff Frank Bifulco's affidavit are supported by the consent forms filed by seventeen (17) additional loan officers alleging that they worked in excess of forty (40) hours per week and were denied overtime compensation (Plaintiffs' Ex. A), as well as the

4

declarations of eight other loan officers attesting to defendants' common compensation practice. (*See* Plaintiffs' Exs. D-K.)

According to plaintiffs and opt-in plaintiffs, by paying these employees on primarily a commission-only basis, with no guaranteed salary, loan officers generally were paid "only if and when [they] sold a home loan." (Plaintiffs' Exs. C-K ¶¶ 6.) Plaintiffs allege that defendants' failure to pay their loan officers a guaranteed compensation of at least $455 per week fails to satisfy the salary basis test for exemption. (Plaintiffs' Memorandum of Law, at 3.) Plaintiffs and opt-in plaintiffs further allege that defendants uniformly administered and enforced their sales policies to all loan officers through their training program, weekly meetings, supervision, and their production goals and quotas. (*See* Plaintiff's Memorandum of Law, at 3.) These employees also observed other loan officers on a daily basis who performed similar duties, were paid on a commission-only basis, and were not paid minimum wage or overtime compensation. (Plaintiff's Exs. C-K ¶ 9.)

Based on the pleadings and evidentiary showing made by plaintiff and opt-in plaintiffs, the Court finds that plaintiffs have satisfied their burden at this initial stage of the FLSA collective action inquiry. In particular, the "similarly situated" requirement has been satisfied because plaintiffs and opt-in plaintiffs have set forth a factual basis – more than "modest" – for having been subject to a common policy of being denied overtime and minimum pay by defendants. *See Hens*, 2006 WL 2795620, at *3. They have made specific allegations about how they were paid for their work by defendants, and this practice is alleged to have been applied to all loan officers employed by Mortgage Zone. Because, at this stage, the burden on plaintiffs is a minimal one and only a "modest factual showing" need be made with respect to the issue of potential plaintiffs being "similarly situated," opt-in plaintiffs' "substantial allegations," *Scholtisek*, 229 F.R.D. at 387, regarding defendants' common failure to pay their loan officers minimum wages and overtime pay pursuant to the FLSA, are sufficient to overcome this burden. *See Patton v. Thompson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *see also Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (describing the burden as "very low" at the notice stage); *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *2 (S.D.N.Y. Jan. 12, 2007) ("Plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist.") (internal quotation marks and citations omitted).

In response to plaintiffs' motion to proceed as a collective action and facilitate notice, defendants have submitted only an Affidavit in Opposition, containing the testimony of Alan Breecker, the President, Owner, Chairman, and Chief Executive Officer of Mortgage Zone. Defendants' affidavit states that the documents submitted with plaintiffs' motion "are replete with lies and false testimony," and alleges that they "are self-serving and the claims within cannot be proven." (Breecker Aff. ¶ 5.) Breecker also contends that the plaintiffs and opt-in plaintiffs were not full-time employees with Mortgage Zone, but rather "maintained other jobs at or about the same time they tried to sell loans for our company." (*Id.* ¶ 6.) Accordingly, Breecker submits that the plaintiffs "can have no substantial proof to demonstrate their claims that they are entitled to overtime pay or otherwise." (*Id.*) Breecker's testimony is an attack on the credibility of plaintiffs and the opt-in plaintiffs. Attacks on credibility are not properly decided

5

by the Court on a motion for conditional certification. Plaintiffs and opt-in plaintiffs have submitted affidavits attesting to the conditions of their compensation and employment, and given such documentary evidence, the Court finds a sufficient factual basis for granting plaintiff's motion at this stage. *Compare Rubery*, 569 F. Supp. 2d at 337 ("[P]laintiff has met her burden to demonstrate, by producing affidavits and time records from other Shop Managers which are indicative of a common policy or plan with respect to the duties and supervisory responsibilities of Shop Managers.") *with Prizmic v. Armour, Inc.*, No. 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614, at *1 (E.D.N.Y. June 12, 2006) (denying conditional class certification where "[p]laintiff [had] not submitted any affidavit or documentation in support of the instant motion"); *see generally Sobczak v. AWL Indus., Inc.*, No. 07 Civ. 1226 (BMC) (RER), 2007 WL 4934239, at *6 (E.D.N.Y. Oct. 22, 2007) (stating that courts regularly grant motions to facilitate notice in collective actions "'based upon employee affidavits setting forth a defendant's plan or scheme'" (quoting *Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006))).

In plaintiffs' and opt-in plaintiffs' declarations to the Court, plaintiffs attest that they regularly worked in excess of forty (40) hours per week and worked evenings, early mornings, and weekends without being properly paid. (Plaintiffs' Ex. C ¶¶ 6-8.) Such attestations, which are consistent with plaintiffs' allegations in this case, are sufficient for the purposes of this motion, and at this stage of the proceedings, the Court will not make any credibility determinations. *See, e.g.*, *Summa v. Hofstra Univ.*, No. 07 Civ. 3307 (DRH) (ARL), 2008 WL 3852160, at *2 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations."). Nor is a motion for conditional certification the proper forum to litigate the merits of plaintiffs' claims. *See, e.g.*, *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification."); *Lynch*, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Neary v. Metro. Property and Cas. Ins. Co.*, 517 F. Supp. 2d 606, 622 (D. Conn. 2007) ("Courts are not to evaluate the merits of potential plaintiffs' claims when determining whether a putative class meets the similarly situated standard."); *Hoffman*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here."). *But see Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008) ("Although district courts have held that the merits of a plaintiff's FLSA claim should not be evaluated in determining whether to authorize notice, these holdings may have derived from jurisprudence discouraging engagement with the merits that was developed in the context of Rule 23 class action certification. But, the Second Circuit in *In re Initial Pub. Offering Sec. Litig.* ('*In re IPO*'), 471 F.3d 24 (2d Cir. 2006), recently clarified that courts deciding whether to certify a class action must determine that each Rule 23 requirement has been met, and that 'the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue.' *Id*. at 41. This Court will, therefore,

scrutinize the merits based on the record developed to date by the parties and to the extent necessary to address this motion for authorization of notice.") (additional citations omitted).[3]

Defendant's affidavit appears to suggest that, in fact, the plaintiffs and the opt-in plaintiffs are similarly situated. Defendant acknowledges that "each of the declarations submitted [is] identical in form and accusation." (Defendant's Aff. ¶ 5.) Defendant's affidavit addresses the plaintiffs as though all are similarly situated, contending that "[t]hese people maintained other jobs at or about the same time they tried to sell loans for our company." (*Id.* ¶ 6.) At minimum, plaintiffs' allegations engage defendants' affidavit sufficiently to justify conditional certification. *Hallissey*, 2008 WL 465112, at *2 ("At the very least, plaintiffs' detailed allegations and supporting affidavits successfully engage defendants' affidavits to the contrary for purposes of the present motion." (quoting *Krueger v. N.Y. Telephone Co.*, Nos. 93 Civ. 0178 (LMM), 93 Civ. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993))). Even if plaintiffs' and opt-in plaintiffs' claims did require some individualized inquiries, this would not necessarily defeat a motion for conditional certification of a collective action. *See, e.g.*, *Neary*, 517 F. Supp. 2d at 620 ("Defendant's argument that in determining whether its claim of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage."); *Hallissey*, 2008 WL 465112, at *2 ("[A]lthough there may be circumstances unique to each CL in this case, the fundamental allegation found in Plaintiffs' declarations and pleadings that CLs were denied minimum and overtime wages because of their classification by AOL as 'volunteers' in the CL program is common to all of the CLs."). Thus, the Court rejects defendants' argument on these grounds.

In sum, and contrary to defendants' contention, plaintiffs have demonstrated a sufficient "factual nexus between [their] situation and the situation of other current and former" employees, *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998), who were potentially denied minimum and overtime wages. The pleadings and affidavits of the plaintiffs and opt-in plaintiffs are sufficient at this stage of the litigation for conditional certification of a collective action pursuant to Section 216(b) of the FLSA.

B. Scope and Form of Notice

Plaintiff further requests that the Court "authorize notice by U.S. first class mail to all similarly situated persons employed by [d]efendants, who are or were employed as

---

[3] The court in *Amendola* engaged in preliminary discovery and analyzed whether plaintiffs were likely to fall within certain exemptions under the FLSA. Here, no discovery has thus far taken place and even if the Court were to undertake some preliminary evaluation of the merits in assessing plaintiff's claims, it would find that there is insufficient evidence to conclude that plaintiff has failed to carry his burden for the purposes of this motion or that defendants have shown "either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation." *Id.* at 467. In further contrast to the situation in *Amendola*, defendants do not argue that plaintiff and opt-in plaintiffs fall within an exception to the requirements of the FLSA as a matter of law. Defendants' argument consists only of the affidavit of Alan Breecker, which asserts that plaintiffs lack credibility and cannot prove their claims on the merits.

7

loan officers or other similarly titled positions from January 22, 2006 to the present to inform them of their right to opt-in to this lawsuit." (Plaintiffs' Memorandum of Law, at 14.) In other words, plaintiff seeks court authorization to circulate this proposed notice of pendency to putative collective action members, beginning three (3) years from the commencement of this lawsuit. Plaintiffs estimate that there are "hundreds of additional similarly situated current and former loan officers" who were employed by defendants during the statutory period. (Plaintiffs' Memorandum of Law, at 10.) Defendants do not specifically address plaintiffs' request to authorize notice, nor do they raise any objections to the scope of plaintiffs' proposed notice.

Even though Section 216(b) does not expressly provide a district court with the authority to order notice, "[t]he Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under this section (generally referred to as 'collective actions'), pursuant to the opt-in provisions of the FLSA." *Rubery*, 569 F. Supp. 2d at 335 (internal citation omitted); *accord Scholtisek*, 229 F.R.D. at 387. Upon conditional certification of an FLSA collective action and notice thereof, class members are given the opportunity to "opt in." *Rubery*, 569 F. Supp. 2d at 336. "Because a collective action requires written consent from the opt-in plaintiffs, 'it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice,' in order to ensure that the drafting and distribution of the notice is 'timely, accurate and informative.'" *Id.* at 336 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)).

As a threshold matter, the time period beginning January 22, 2006 to the present is the appropriate time frame for opt-in plaintiffs to have been employed by defendants. The FLSA has a maximum three year statute of limitations period for willful violations, which plaintiffs allege occurred in this case. *See* 29 U.S.C. § 255(a). Plaintiffs filed the complaint in this action on January 22, 2009, so three years prior to commencement of the lawsuit is January 22, 2006. Because the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256(a), January 22, 2006 is the earliest possible date that a plaintiff in this case may have been last employed by defendants in order to have a timely claim under the FLSA. Defendants do not contend otherwise.

The Court also notes that the term "class action" should not be used to describe the lawsuit in this context, nor should the word "class" be used to describe the opt-in plaintiffs. The Court finds that the phrase "collective action" should be used to describe the lawsuit in its current form and/or the phrase "class action" should be deleted, including in the title of the notice and its introduction. The title may read, "Notice of Lawsuit with Opportunity to Join." *See, e.g.*, *Sobczak*, 540 F. Supp. 2d at 365. The use of the word "class" is also misleading to a layperson and should be stricken or substituted accordingly. *See Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380(LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007).

In the introduction section of the notice, clarification is missing; accordingly, the first sentence of Part I should state something to the effect of: "A collective action lawsuit has been filed against The Mortgage Zone, Inc. for the alleged failure to pay overtime and/or

8

minimum wages to loan officers as required by law."

In accordance with this Memorandum and Order, the parties shall submit a joint proposed notice to the Court for approval "in order to ensure that the drafting and distribution of the notice is timely, accurate and informative." *Rubery*, 569 F. Supp. 2d at 336 (internal citation and quotation marks omitted); *see also Amendola*, 558 F. Supp. 2d at 467 ("District courts may set the conditions under which a plaintiff gives notice to fellow employees of the existence of a collective action and the steps they must take if they wish to join the action."); *Iriarte v. Redwood Deli & Catering, Inc.*, CV-07-5062 (FB) (SMG), 2008 U.S. Dist. LEXIS 50072, at *4 (E.D.N.Y. June 30, 2008) ("Courts have broad discretion over whether to grant certification, what discovery to allow, and what form of notice to provide."); *Mendoza*, 2008 WL 938584, at *1 ("Courts have wide discretion here to grant certification, allow discovery, and regulate notice."). This joint proposed notice shall be submitted within thirty (30) days of the date of this Memorandum and Order.

### C. Production of Names, Telephone Numbers, and Addresses

Plaintiffs also seek relief "requir[ing] [d]efendants to produce a computer-readable data file containing the names, addresses and telephone numbers of [] potential opt-in members so that notice may be issued[.]" (Plaintiffs' Memorandum of Law, at 14.) Courts often grant this kind of request in connection with a conditional certification of an FLSA collective action, and this Court concludes that such a request is appropriate in this case. *See, e.g.*, *Hens*, 2006 WL 2795620, at *5 (stating that the name, last known mailing address, last known telephone number, work location, and dates of employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be disclosed"); *Sherrill*, 487 F. Supp. 2d at 350 ("I agree that such information is essential to identifying prospective opt-in plaintiffs."); *Chowdhury*, 2007 WL 2873929, at *2 ("When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential plaintiffs."); *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007) ("Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action."); *Rubery*, 569 F. Supp. 2d 334, 338 ("Counsel's request for contact information from those opting into the class is neither unusual nor inappropriate."). Providing such information is neither unduly burdensome or disruptive to defendant's business operations. *See Hallissey*, 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business.") (citation omitted). Defendants shall provide this information to plaintiffs within forty-five (45) days of the date of this Memorandum and Order, provided that the notice submitted by the parties is approved by the Court.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, and for court authorized notice and the production by defendants of certain employees' names, telephone numbers, and addresses, is granted.

The parties shall submit a joint revised proposed notice by December 9, 2009 that is consistent with the rulings on the language contained in this Memorandum and Order. The Court also grants plaintiffs permission to substitute an opt-in plaintiff to replace Sam Miller and serve as a named plaintiff in this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 9, 2009
Central Islip, NY

\* \* \*

The attorney for plaintiff is Erik Harald Langeland of Erik H. Langeland, P.C., 500 Fifth Avenue, Suite 1610, New York, New York 10110. The attorney for the defendants is Paul J. Solda of Law Office of Paul J. Solda, Empire State Building, 350 Fifth Avenue, Suite 4400, New York, NY 10118.